EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
ERIE COUNTY
-----------------------------------------------------------------------------------X

NORA MASSEY, INDIVIDUALLY AND AS ESTATE
ADMINISTRATOR FOR DECEDENT, TERROL MASSEY,

                                    Plaintiff,

                        -against-

DEPUTY COMMISSIONER AND CHIEF MEDICAL OFFICER OF
NYS DOCCS CARL KOENIGSMANN, MD, LAKEVIEW CF
WARDEN BRIAN KUBIK, LAKEVIEW CF FACILITY HEALTH
SERVICES ADMINISTRATOR IAN CAISLEY, MD, SOUTHPORT
CF WARDEN PAUL PICCOLO, SOUTHPORT CF FACILITY
HEALTH SERVICES ADMINISTRATOR AMY FELKER,
WYOMING CF WARDEN THOMAS STICHT, WYOMING CF
FACILITY HEALTH SERVICES ADMINISTRATOR DONNA
DESMONE, MD, DOCCS LIEUTENANT JONATHAN KINNEY,
COLLEEN CLOKE (DOCCS RN #417), PAMELA PEPPER
(DOCCS RN #UNK), MICHAEL WARR (DOCCS RN #264),
CHRISTINE PARKER (DOCCS RN #253), HEATHER GREEN
(DOCCS RN #244), LUCY ROSARIO (DOCCS RN #284), and
DOCCS MEMBER DOES # 1-3,

                                    Defendants.
-----------------------------------------------------------------------------------X

Index No.:

**SUMMONS**

Plaintiff designates
ERIE COUNTY as the
Venue and place of
trial.

The basis of Venue is
that the Letters of
Administration in this
matter were issued in
ERIE COUNTY, where
Plaintiff also resides.

**TO THE ABOVE-NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy
of your Answer on the Plaintiffs' attorney within 20 days after the service of this Summons, or
within 30 days after service of this Summons is complete if this Summons is not personally
delivered to you within the State of New York.

In the event of your failure to Answer this Summons, a judgment by default will be taken against
you for the relief demanded in the complaint, together with the interest, costs and/or disbursements
of this action.

**Dated:** Brooklyn, New York
          January 3, 2024

                              KAISHIAN & MORTAZAVI LLC

                              By: _____
                                  Maryanne K. Kaishian, Esq.

## SUMMONS ADDENDUM

**DEPUTY COMMISSIONER AND CHIEF MEDICAL OFFICER OF NYS DOCCS**
**CARL KOENIGSMANN, MD**
New York State Department of Corrections and Community Service
1220 Washington Ave., Bldg. 9
Albany, New York 12226

**LAKEVIEW CF WARDEN BRIAN KUBIK**
Lakeview Correctional Facility
9300 Lake Ave.
Brocton, NY 14716

**LAKEVIEW CF FACILITY HEALTH SERVICES ADMINISTRATOR**
**IAN CAISLEY, MD**
Lakeview Correctional Facility
9300 Lake Ave.
Brocton, NY 14716

**SOUTHPORT CF WARDEN PAUL PICCOLO**
Southport Correctional Facility
236 Bob Masia Dr.
Pine City, NY 14871

**SOUTHPORT CF FACILITY HEALTH SERVICES ADMINISTRATOR**
**AMY FELKER**
Southport Correctional Facility
236 Bob Masia Dr.
Pine City, NY 14871

**WYOMING CF WARDEN THOMAS STICHT**
Wyoming Correctional Facility
3203 Dunbar Rd.
Attica, NY 14011

**WYOMING CF FACILITY HEALTH SERVICES ADMINISTRATOR**
**DONNA DESMONE, MD**
Wyoming Correctional Facility
3203 Dunbar Rd.
Attica, NY 14011

**DOCCS LIEUTENANT JONATHAN KINNEY**
Lakeview Correctional Facility
9300 Lake Ave.
Brocton, NY 14716

**COLLEEN CLOKE (DOCCS RN #417)**
Southport Correctional Facility
236 Bob Masia Dr.
Pine City, NY 14871

**PAMELA PEPPER (DOCCS RN #UNK)**
Southport Correctional Facility
236 Bob Masia Dr.
Pine City, NY 14871

**MICHAEL WARR (DOCCS RN #264)**
Southport Correctional Facility
236 Bob Masia Dr.
Pine City, NY 14871

**CHRISTINE PARKER (DOCCS RN# 253)**
Lakeview Correctional Facility
9300 Lake Ave.
Brocton, NY 14716

**HEATHER GREEN (DOCCS RN #244)**
Wyoming Correctional Facility
3203 Dunbar Rd.
Attica, NY 14011

**LUCY ROSARIO (DOCCS RN #284)**
Lakeview Correctional Facility
9300 Lake Ave.
Brocton, NY 14716

SUPREME COURT OF THE STATE OF NEW YORK
ERIE COUNTY
-------------------------------------------------------------------------------------X

NORA MASSEY, INDIVIDUALLY AND AS ESTATE
ADMINISTRATOR FOR DECEDENT, TERROL MASSEY,

                                     Plaintiff,

                    -against-

DEPUTY COMMISSIONER AND CHIEF MEDICAL OFFICER OF
NYS DOCCS CARL KOENIGSMANN, MD, LAKEVIEW CF
WARDEN BRIAN KUBIK, LAKEVIEW CF FACILITY HEALTH
SERVICES ADMINISTRATOR IAN CAISLEY, MD, SOUTHPORT
CF WARDEN PAUL PICCOLO, SOUTHPORT CF FACILITY
HEALTH SERVICES ADMINISTRATOR AMY FELKER,
WYOMING CF WARDEN THOMAS STICHT, WYOMING CF
FACILITY HEALTH SERVICES ADMINISTRATOR DONNA
DESMONE, MD, DOCCS LIEUTENANT JONATHAN KINNEY,
COLLEEN CLOKE (DOCCS RN #417), PAMELA PEPPER
(DOCCS RN #UNK), MICHAEL WARR (DOCCS RN #264),
CHRISTINE PARKER (DOCCS RN #253), HEATHER GREEN
(DOCCS RN #244), LUCY ROSARIO (DOCCS RN #284), and
DOCCS MEMBER DOES # 1-3,

                                  Defendants.
-------------------------------------------------------------------------------------X

**Index No.**

**<u>VERIFIED
COMPLAINT</u>**

**PLAINTIFF DEMANDS
A TRIAL BY JURY.**

Plaintiff NORA MASSEY, individually and as Administrator of the ESTATE OF TERROL

MASSEY, Decedent, by her attorneys, KAISHIAN & MORTAZAVI LLC, by MARYANNE K.

KAISHIAN, ESQ., an attorney duly admitted to practice law before this Court and all courts of

the State of New York, hereby complains of Defendants as follows:

## <u>PRELIMINARY STATEMENT</u>

       1.      On January 3, 2022, Decedent Terrol Massey died at Montefiore Mount Vernon

Hospital Center in Westchester County, State of New York, at age 32.

       2.      Mr. Massey was just 16 years old when he was sentenced to a term of

incarceration in New York State custody in 2005. Mr. Massey would have been eligible for parole

in 2025.

3.      For least six (6) months prior to his death, while Mr. Massey was serving a prison sentence in the care and/or custody of Defendants, who are each employed by the New York State Department of Correction and Community Supervision (DOCCS), Defendants continually exhibited deliberate indifference to Mr. Massey's urgent medical needs despite Mr. Massey presenting with increasingly serious, excruciating, and debilitating symptoms of untreated brain cancer.

4.      Defendants caused Decedent to experience severe and conscious pre-death pain and suffering and to die a lingering death in custody.

5.      Nora Massey, Decedent's mother and the Administrator of his Estate, now brings this claim for Decedent's claims pursuant to 42 U.S.C. § 1983 for conscious pain and suffering, loss of life, and further damages against the individual Defendants named herein for their conduct undertaken under color of New York State law.

## PROCEDURAL HISTORY AND CONDITIONS MET

6.      Venue is properly before this Court, the Supreme Court of New York State, Erie County, pursuant to C.P.L. § 503(b), as Plaintiff Nora Massey was appointed Estate Administrator by the Erie County Surrogate's Court through letters issued on May 5, 2022.

7.      Venue is further properly before this Court pursuant to C.P.L. § 503(a), as Plaintiff Nora Massey is an adult resident of Erie County, State of New York.

8.      At all relevant times, as distinct from his physical presence in DOCCS facilities, Decedent Terrol Massey was a lawful resident of Erie County, State of New York.

9.      This Court has jurisdiction over Plaintiff's Federal claims as alleged against the individual Defendants, who are each sued in their respective individual capacities for actions taken under color of law during their employment by the New York State Department of Correction.

10.     The damages sought in this matter exceed the jurisdictional limits of all lower courts.

11.     This action was timely initiated within three years of Decedent's death pursuant to applicable law.

12.     Plaintiff Nora Massey, individually and as the Administrator of Decedent's Estate, now brings the following claims before this Court.

### PARTIES

13.     **DECEDENT TERROL MASSEY**, at all relevant times mentioned herein and until the date of his death, was a resident of Erie County, City and State of New York. At the time of his death on January 3, 2022, Decedent Terrol Massey was detained pretrial in the custody of the State of New York. At the time of his death, Terrol Massey was a patient at the Montefiore Mount Vernon Hospital Center in Westchester County, State of New York.

14.     **PLAINTIFF NORA MASSEY** ("Estate Administrator" or "Ms. Massey") is the mother of Terrol Massey, the oldest of her three children, and is the Estate Administrator by order of New York County Surrogate's Court, with letters issued to this effect dated May 5, 2022. Ms. Massey is a resident of Erie County in the City and State of New York.

15.     At all relevant times herein, the New York State Department of Corrections and Community Supervision ("DOCCS") is an agency of the State of New York with its central office in Albany, New York. DOCCS is responsible for the confinement and habitation of incarcerated individuals held in correctional facilities throughout the State.

16.     At all relevant times, Defendants were each employed by DOCCS and acting under color of State law.

17.     Wyoming Correctional Facility (Wyoming CF) is a DOCCS prison facility where Decedent was incarcerated and is located in Attica, Wyoming County, State of New York.

18.     Southport Correctional Facility ("Southport CF") is a DOCCS prison facility where Decedent was incarcerated and is located in Elmira, Chemung County, State of New York.

19.     Lakeview Correctional Facility ("Lakeview CF") is a DOCCS prison facility where Decedent was incarcerated and is located in Brocton, Chautauqua County, State of New York.

20.     **DEFENDANT DEPUTY COMMISSIONER AND CHIEF MEDICAL OFFICER OF NYS DOCCS CARL KOENIGSMANN, MD, ("Defendant Koenigsmann")**, at all relevant times, was the Deputy Commissioner and Chief Medical Officer of NYS DOCCS. In this role, Defendant Koenigsmann was responsible for overseeing and administering the healthcare of individuals incarcerated in the care and custody of NYS DOCCS. Defendant Koenigsmann was also personally responsible for reviewing and approving each report of loss of consciousness and/or potential instances of intoxication within DOCCS facilities. In accordance with DOCCS policy, these reports are prepared by staff at the facility where the incident(s) occurred and sent directly to Defendant Koenigsmann upon completion. Defendant Koenigsmann, at all relevant times, waws responsible for ensuring proper DOCCS and medical responses to all such incidents and other medical events. He is sued individually pursuant to 42 U.S.C. § 1983.

21.     **DEFENDANT WYOMING CF FACILITY HEALTH SERVICES ADMINISTRATOR DONNA DESMONE, MD, ("DEFENDANT DESMONE"),** at all

relevant times, was the Facility Health Services Director employed by DOCCS and assigned to Wyoming CF. As Facility Health Services Director, this Defendant was responsible for administering, monitoring, overseeing, managing, and otherwise ensuring the medical care of individuals incarcerated at the DOCCS facility. Defendant was further responsible for reviewing emergency responses, patient assessments, and requests for medical care generated in the facility by Healthcare Services employees and for reviewing and/or approving determinations regarding housing placements, transfers, punitive segregation, and other administrative designations and actions requiring Healthcare Services input and/or clearance. In this role, Defendant was responsible for ensuring that all Healthcare Services employees under her supervision were properly administering and/or requesting care for incarcerated patients and for providing medical care as needed. At all times, as an employee and supervisor with the New York State DOCCS, this Defendant was acting under color of law at all relevant times, including through administering, overseeing, and ensuring medical care for individuals incarcerated in New York State custody. This Defendant is sued in her individual capacity pursuant to 42 U.S.C. § 1983.

22. **DEFENDANT WYOMING CF WARDEN THOMAS STICHT ("DEFENDANT STICHT")**, at all relevant times, was employed by New York State DOCCS as Warden of Wyoming CF. As DOCCS Warden, this Defendant was responsible for the day-to-day administration of Wyoming CF. As DOCCS Warden, Defendant's responsibilities included assigning, directing, and approving all housing transfers and/or placements, the implementation of punitive and/or disciplinary action, for ensuring the wellbeing, health, and safety of all individuals incarcerated in New York State custody within the DOCCS facility. In this role, Defendant was further responsible for reviewing, approving, monitoring, correcting, and overseeing all requests for emergency medical care, all reports of emergency medical responses, and the administration

of medical care in conjunction with the prison's DOCCS Healthcare Services. As Warden and as an employee and supervisor with the New York State DOCCS, this Defendant was acting under color of law at all relevant times. This Defendant is sued in his individual capacity pursuant to 42 U.S.C. § 1983.

23.     **DEFENDANT LAKEVIEW CF FACILITY HEALTH SERVICES ADMINISTRATOR IAN CAISLEY, MD, ("DEFENDANT CAISLEY")**, at all relevant times, was the Facility Health Services Director employed by DOCCS and assigned to Lakeview CF. As Facility Health Services Director, this Defendant was responsible for administering, monitoring, overseeing, and otherwise ensuring the medical care of individuals incarcerated at the DOCCS facility. Defendant was further responsible for reviewing emergency responses, patient assessments, and requests for medical care generated in the facility by Healthcare Services employees and for reviewing and/or approving determinations regarding housing placements, transfers, punitive segregation, and other administrative designations and actions requiring Healthcare Services input and/or clearance. In this role, Defendant was responsible for ensuring that all Healthcare Services employees under her supervision were properly administering and/or requesting care for incarcerated patients and for providing medical care as needed. As an employee and supervisor with the New York State DOCCS, this Defendant was acting under color of law at all relevant times, including through administering, overseeing, and ensuring medical care for individuals incarcerated in New York State custody. This Defendant is sued in her individual capacity pursuant to 42 U.S.C. § 1983.

24.     **DEFENDANT LAKEVIEW CF WARDEN BRIAN KUBIK ("DEFENDANT KUBIK")**, at all relevant times, was employed by New York State DOCCS as Warden of Lakeview CF. As DOCCS Warden, this Defendant was responsible for the day-to-day administration of

Wyoming CF. As DOCCS Warden, Defendant's responsibilities included assigning, directing, and approving all housing transfers and/or placements, the implementation of punitive and/or disciplinary action, for ensuring the wellbeing, health, and safety of all individuals incarcerated in New York State custody within the DOCCS facility. In this role, Defendant was further responsible for reviewing, approving, monitoring, correcting, and overseeing all requests for emergency medical care, all reports of emergency medical responses, and the administration of medical care in conjunction with the prison's DOCCS Healthcare Services. As Warden and as an employee and supervisor with the New York State DOCCS, this Defendant was acting under color of law at all relevant times. This Defendant is sued in his individual capacity pursuant to 42 U.S.C. § 1983.

25.     **DEFENDANT SOUTHPORT CF FACILITY HEALTH SERVICES ADMINISTRATOR AMY FELKER ("DEFENDANT FELKER"),** at all relevant times, was the Facility Health Services Director employed by DOCCS and assigned to Southport CF. As Facility Health Services Director, this Defendant was responsible for administering, monitoring, overseeing, and otherwise ensuring the medical care of individuals incarcerated at the DOCCS facility. Defendant was further responsible for reviewing emergency responses, patient assessments, and requests for medical care generated in the facility by Healthcare Services employees and for reviewing and/or approving determinations regarding housing placements, transfers, punitive segregation, and other administrative designations and actions requiring Healthcare Services input and/or clearance. In this role, Defendant was responsible for ensuring that all Healthcare Services employees under her supervision were properly administering and/or requesting care for incarcerated patients and for providing medical care as needed. As an employee and supervisor with the New York State DOCCS, this Defendant was acting under color of law at all relevant times, including through administering, overseeing, and ensuring medical care for

individuals incarcerated in New York State custody. This Defendant is sued in her individual capacity pursuant to 42 U.S.C. § 1983.

26.    **DEFENDANT SOUTHPORT CF WARDEN PAUL PICCOLO ("DEFENDANT PICCOLO")**, at all relevant times, was Warden of Southport CF and was employed by New York State's DOCCS. this Defendant was responsible for the day-to-day administration of Southport CF. As DOCCS Warden, Defendant's responsibilities included assigning, directing, and approving all housing transfers and/or placements, the implementation of punitive and/or disciplinary action, for ensuring the wellbeing, health, and safety of all individuals incarcerated in New York State custody within the DOCCS facility. In this role, Defendant was further responsible for reviewing, approving, monitoring, correcting, and overseeing all requests for emergency medical care, all reports of emergency medical responses, and the administration of medical care in conjunction with the prison's DOCCS Healthcare Services. As Warden and as an employee and supervisor with the New York State DOCCS, this Defendant was acting under color of law at all relevant times. This Defendant is sued in his individual capacity pursuant to 42 U.S.C. § 1983.

27.    **DEFENDANTS COLLEEN CLOKE (RN # 417) ("DEFENDANT Cloke"), PAMELA PEPPER ("DEFENDANT PEPPER"), MICHAEL WARR (RN # 264) ("DEFENDANT WARR"), CHRISTINE PARKER (RN # 253) ("DEFENDANT PARKER"), HEATHER GREEN (RN # 244) (" DEFENDANT GREEN") and LUCY ROSARIO (RN # 284) ("DEFENDANT ROSARIO"),** at all relevant times, were employed by New York State and its DOCCS as nurses and/or medical providers with DOCCS Healthcare Services. In their respective roles as medical providers for New York State DOCCS Healthcare Services, these Defendants were responsible for administering medical care to incarcerated individuals in DOCCS

Case 1:25-cv-00372    Document 1-2    Filed 04/25/25    Page 13 of 35

custody, for assessing the medical needs of individuals and referring these individuals to appropriate care, reporting medical findings, assessing and screening individuals for transfers and/or housing placements and/or punitive segregation, adhering to DOCCS procedures for forwarding patient information to Healthcare Services Administrators and DOCCS supervisors, and for providing or seeking healthcare in accordance with individual incarcerated patients' medical needs. At all relevant times, these Defendants were acting under color of law in their respective roles as DOCCS Healthcare Services employees. They are sued individually pursuant to 42 U.S.C. § 1983.

28.     **DEFENDANT DOCCS MEMBER DOE # 1** was the DOCCS employee assigned as Unit Officer assigned to Mr. Massey's housing area while Mr. Massey was incarcerated at all relevant times at Wyoming CF.

29.     **DEFENDANT DOCCS MEMBER DOE # 2** was the DOCCS employee assigned as Unit Officer assigned to Mr. Massey's housing area while Mr. Massey was incarcerated at all relevant times at Southport CF.

30.     **DEFENDANT DOCCS MEMBER DOE # 3** was the DOCCS employee assigned as Unit Officer assigned to Mr. Massey's housing area while Mr. Massey was incarcerated at all relevant times at Lakeview CF.

31.     The true identities of Defendant DOCCS Member Does # 1-3 are currently unknown to Plaintiff, and they are referred to herein using the fictitious placeholders "DOCCS Member Doe(s)." At all relevant times, these individual Defendants were employed as corrections officers and/or corrections officials by New York State DOCCS.

32.     At the time of the incidents giving rise to this Complaint, Defendant DOCCS Unit Officers were responsible for ensuring the health, safety, and wellbeing of all individuals

incarcerated in the unit to which these Defendants were assigned. In this role, Defendants were responsible for responding to all requests for emergency medical services by incarcerated individuals, including Decedent, placing calls for emergency care with Health Services, generating reports regarding their observations of illness or emergency events, including suspected overdoses, for review by supervisor Defendants, and transporting incarcerated individuals such as Decedent to medical appointments. These Defendants are sued in their respective individual capacities.

33.     At all times hereinafter mentioned, all Defendants were acting under color of law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York.

34.     At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or undertaken with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

35.     Defendants are jointly and severally liable for damages claimed herein.

36.     At all relevant times herein, Wyoming CF, Southport CF, Lakeview Shock CF, and the DOCCS clinics were operated,  maintained, and staffed by New York State DOCCS, and each individual Defendant was acting under color of law as an agent and/or employee of this agency.

37.     Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendant take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow agents, or to otherwise mitigate the dangers these acts and omissions posed to Decedent.

## STATEMENT OF MATERIAL FACTS

38.     Mr. Massey was incarcerated in NYS DOCCS custody in April 2021 when he began experiencing episodes of painful and intense headaches, dizziness, and disorientation.

39.     As a result of Defendants' conduct described herein, Mr. Massey received no care, diagnostic imaging, assessments, or testing for his symptoms until six (6) months later, when he was hospitalized in the final weeks of his life.

40.     As a result of Defendants' conduct, Mr. Massey received no pain management or treatment during this period while his brain cancer progressed and caused rapidly worsening symptoms.

41.     As a result of Defendants' conduct, Mr. Massey died just six (6) weeks after his significantly delayed diagnosis of brain cancer.

42.     Mr. Massey's serious symptoms emerged while he was imprisoned at Wyoming Correctional Facility, at the latest, in May 2021.

43.     These symptoms included severe migraines, dizziness, vomiting, numbness and tingling in his extremities, reduced motor function, and loss of consciousness.

44.     Mr. Massey also began experiencing changes in his behavior, including disorientation and periods of confusion, while imprisoned at Wyoming CF.

45.     **DEFENDANT WYOMING CF FACILITY HEALTH SERVICES ADMINISTRATOR DONNA DESMONE, MD, ("DEFENDANT DESMONE")** who was responsible for overseeing adequate medical care at Wyoming Correctional Facility, failed to provide Mr. Massey with medical care.

46.     Mr. Massey's repeated requests for care submitted between April and July 2021 and his worsening condition were noted by staff in records reviewed by **DEFENDANT DESMONE**.

47.    In accordance with DOCCS policy, **DEFENDANT WYOMING CF WARDEN THOMAS STICHT ("DEFENDANT STICHT")** and **DEFENDANT DESMONE** received and reviewed Mr. Massey's requests for care placed with and/or by DOCCS staff and relevant healthcare information but declined to ensure Mr. Massey's treatment.

48.    **DEFENDANT DESMONE** failed to provide Mr. Massey even with a routine physical. Mr. Massey's last routine physical examination in Defendant's custody took place eight (8) years earlier, in 2013.

49.    Mr. Massey's symptoms worsened and his pain and suffering increased.

50.    Beginning in June 2021, while Mr. Massey remained incarcerated at Wyoming CF, he began to experience sudden loss of consciousness and severe migraines with increasing regularity.

51.    In accordance Mr. Massey placed requests for medical care with **DEFENDANT DOCCS MEMBER DOE # 1**, who was the Unit Officer assigned to Mr. Massey's housing area during his incarceration between May and July 2021.

52.    **DEFENDANT DOCCS MEMBER DOE # 1** failed to provide Mr. Massey with requested medical care.

53.    On June 10, 2021, Mr. Massey was discovered unconscious on the floor of the bathroom area at Wyoming CF by DOCCS staff.

54.    Mr. Massey had vomited upon himself and was disoriented and in severe pain upon regaining consciousness.

55.    Mr. Massey's tooth struck a hard surface after he fell, causing it to break and causing him additional pain.

56.    On June 10, 2021, **DEFENDANT GREEN (RN # 244)**, assessed Mr. Massey

following this incident and reported that Mr. Massey's severe symptoms were caused by intentional alcohol intoxication.

57.    However, Mr. Massey tested negative for alcohol upon examination by medical staff in a test administered the same day.

58.    On or about June 10, 2021, information related to this incident, in accordance with DOCCS policy, was shared directly with **DEFENDANT DEPUTY COMMISSIONER AND CHIEF MEDICAL OFFICER OF NYS DOCCS CARL KOENIGSMANN, MD,** who reviewed and signed the reports detailing Mr. Massey's symptoms, including loss of consciousness and severe illness, but failed to ensure that Mr. Massey received medical care.

59.    The records and reports related to this incident were provided to and reviewed by **DEFENDANT STICHT** and **DEFENDANT DESMONE**.

60.    Even after Mr. Massey tested negative for intoxicants upon examination by medical staff, no follow up care was provided to address these severe and concerning symptoms.

61.    Instead, Mr. Massey was punished by Defendants for perceived failure to adhere to facility policy.

62.    Mr. Massey was thereafter sentenced to a period of two hundred (200) days in solitary confinement in the Specialized Housing Unit (SHU) at Southport CF.

63.    **DEFENDANT WARDEN STICHT** reviewed Mr. Massey's records and approved, cleared, and/or directed this transfer despite clear evidence of Mr. Massey's need for urgent medical care.

64.    **DEFENDANT DESMONE** and **DEFENDANT STICHT** approved and cleared Mr. Massey for placement in a non-medical setting with full knowledge of Mr. Massey's need for medical care.

65.     While incarcerated at Southport CF, **DEFENDANT SOUTHPORT WARDEN PAUL PICCOLO ("DEFENDANT PICCOLO")** subjected Mr. Massey to conditions of impermissible solitary confinement in violation of <u>Corr. Law § 137</u>, including 24-hour involuntary lockdowns, no access to phones, lack of recreational out-of-cell time, limited access to food, showers, and potable water, and the further denial of needed medical care.

66.     **DEFENDANT PICCOLO** approved and directed Mr. Massey's placement in solitary confinement with full knowledge of Mr. Massey's need for medical care.

67.     **DEFENDANT SOUTHPORT FACILITY HEALTH ADMINISTRATOR AMY FELKER ("DEFENDANT FELKER")** approved and cleared Mr. Massey for placement in a non-medical setting with full knowledge of Mr. Massey's need for medical care.

68.     **DEFENDANT FELKER** failed to provide Mr. Massey even with a routine physical during his incarceration. Mr. Massey's last routine physical examination in Defendant's custody took place eight (8) years earlier, in 2013.

69.     Mr. Massey's condition worsened while he remained locked inside his cell in solitary confinement.

70.     Mr. Massey began to experience loss of sensation, tingling, numbness, and pain in his extremities, including most notably his right hand.

71.     In accordance with DOCCS sick call procedures and requirements, Mr. Massey requested care from **DEFENDANT DOE # 2** during this period, but this Defendant failed to provide Mr. Massey with medical care.

72.     During his incarceration at Southport CF, Mr. Massey experienced an increase in episodes of loss of consciousness and/or seizures in addition to worsening headaches, severe and increasing pain, and periods of vomiting without medical assistance.

73.     **DEFENDANTS FELKER, WARR, PICCOLO,** and **KOENIGSMANN**, all of whom were personally aware of Mr. Massey's need for emergency medical care during this period of his confinement at Southport CF, refused to provide Mr. Massey with medical care.

74.     Mr. Massey's continued requests for care and reports of his symptoms were placed with DOCCS staff, who reported these requests directly to **DEFENDANT PICCOLO** and **DEFENDANT FELKER**. These Defendants continued to deny Mr. Massey medical care.

75.     On July 19, 2021, Mr. Massey was cleared for transfer and/or punitive segregation following an assessment administered by **DEFENDANT PAMELA PEPPER** submitted this screening to **DEFENDANT FELKER** for review pursuant to DOCCS policy.

76.     Although Mr. Massey was visibly in distress and had a significant history of medical needs, the assessment declined to make any referral for services and indicated "no" in response to all questions, including those contradicted by DOCCS own records.

77.     **DEFENDANT PEPPER** failed to provide Mr. Massey with urgently needed medical care.

78.     **DEFENDANT FELKER** failed to provide medical care or to intervene on Mr. Massey's behalf, despite knowledge of Mr. Massey's ongoing need for urgent care and knowledge of his medical history.

79.     On July 20, 2021, **DEFENDANT COLLEEN CLOKE (RN # 417)**, again cleared Mr. Massey for transfer and/or punitive segregation and submitted this screening to **DEFENDANT FELKER** for review pursuant to DOCCS policy.

80.     During this screening, Mr. Massey reported ongoing symptoms the continuing numbness, tingling, and pain in his right hand.

81.     **DEFENDANT CLOKE** failed to provide Mr. Massey with urgently needed

medical care.

82.    **DEFENDANT FELKER** failed to provide medical care or to intervene on Mr. Massey's behalf, despite knowledge of Mr. Massey's ongoing need for urgent care.

83.    On or about July 21, 2021, Mr. Massey was transferred at the direction and with the approval of **DEFENDANTS STITCH** and **FELKER** at Southport CF and **DEFENDANT LAKEVIEW SHOCK CF WARDEN BRIAN KUBIK ("DEFENDANT KUBIK")** to Lakeview Shock CF, which operated as a "bootcamp" for incarcerated people in Defendant's custody.[1]

84.    Mr. Massey continued to suffer from excruciating migraine headaches, vomiting, and seizures and/or periods of loss of consciousness while imprisoned at Lakeview CF.

85.    **DEFENDANT LAKEVIEW CF HEALTH SERVICES ADMINISTRATOR IAN CAISLEY, MD**, failed to provide Mr. Massey with basic medical care despite Mr. Massey's continued requests and obvious severe symptoms of illness.

86.    **DEFENDANT CAISLEY** failed to provide Mr. Massey even with a routine physical during his incarceration at this facility. Mr. Massey's last routine physical examination in Defendant's custody took place eight (8) years earlier, in 2013.

87.    On August 27, 2021, Mr. Massey was administered a screening by DOCCS staff member at Lakeview CF, who submitted this screening to **DEFENDANT CAISLEY** for review pursuant to DOCCS policy.

88.    Although Mr. Massey was visibly in distress and had a significant history of medical needs, the assessment declined to make any referral for services and indicated "no" in

---

[1] *See* Keri Blakinger, *'A Humiliating Experience': Prisoners Allege Abuse at Discipline-focused 'Shock' Camps*, THE MARSHALL PROJECT, Oct. 24, 2022, *available at* https://www.themarshallproject.org/2022/02/24/a-humiliating-experience-prisoners-allege-abuse-at-discipline-focused-shock-camps.

response to all questions, including those contradicted by DOCCS own records.

89.     **DEFENDANT CAISLEY** failed to provide medical care or to intervene on Mr. Massey's behalf.

90.     On September 5, 2021, Mr. Massey was again discovered unconscious in his cell after having experienced a seizure and/or loss of consciousness.

91.     Mr. Massey vomited and urinated on himself during this episode.

92.     Mr. Massey denied ingesting drugs or alcohol and maintained he was severely ill.

93.     Mr. Massey was seen by **DEFENDANT ROSARIO (RN # 284)** who failed to assess Mr. Massey to determine the causes of his severe symptoms and failed to recommend his transfer to a higher care facility.

94.     Defendants again attributed Mr. Massey's symptoms to intoxication from illicit substances, which would also have constituted a serious medical need, yet still failed to provide appropriate medical care.

95.     DOCCS staff's observations of Mr. Massey's deteriorating state were shared directly with **DEFENDANT CAISLEY** and **DEFENDANT WARDEN KUBIK**, but no Defendants acted on Mr. Massey's behalf.

96.     The information related to this incident, in accordance with DOCCS policy, was once again also shared directly with **DEFENDANT DEPUTY COMMISSIONER AND CHIEF MEDICAL OFFICER OF NYS DOCCS CARL KOENIGSMANN, MD**, who reviewed and signed the reports detailing Mr. Massey's symptoms, including loss of consciousness and severe illness in the context of reports evincing Mr. Massey's ongoing need for urgent medical care, but failed to ensure that Mr. Massey received medical care.

97.     On September 7, 2021, Mr. Massey informed **DEFENDANT CHRISTINE**

Case 1:25-cv-00372 Document 1-2 Filed 04/25/25 Page 22 of 35

**PARKER (RN # 253)** that he had not been intoxicated and again requested to be seen by medical staff, as he remained ill.

98. **DEFENDANT PARKER** failed to provide Mr. Massey with medical care.

99. Mr. Massey continued to deteriorate.

100. From October 3 through October 5, 2021, Mr. Massey was unable to eat without vomiting and experienced numbness in his pain and jaw.

101. Mr. Massey repeatedly reported the same to **DEFENDANT DOCCS LIEUTENANT JONATHAN KINNEY ("DEFENDANT KINNEY")**, who failed to provide medical care.

102. In accordance with DOCCS policy, Mr. Massey repeatedly reported his need for emergency medical care to **DEFENDANT DOCCS MEMBER DOE # 3**, who also failed to provide medical care.

103. Mr. Massey further reported the same and requested care from DOCCS staff, who lodged these requests with **DEFENDANT KINNEY** and **DEFENDANT CAISLEY** in accordance with DOCCS policy.

104. Defendants each failed to ensure that Mr. Massey received reasonable medical care.

105. On October 18, 2021, Mr. Massey called his mother, Plaintiff Nora Massey, approximately eight (8) times.

106. Mr. Massey expressed that he was in severe pain and in fear for his life due to his worsening condition.

107. This call was made on a recorded line monitored by Defendants at this facility.

108. On October 21, Mr. Massey was again discovered unconscious in his cell at

Lakeview CF.

109. Mr. Massey was disoriented, had difficulty dressing himself and struggled for 20 minutes to put on his clothes, and had difficulty walking and speaking.

110. These symptoms were observed and reported by DOCCS staff to **DEFENDANT FELKER** and **DEFENDANT WARDEN PICCOLO** at Southport CF.

111. All these Defendants refused to provide Mr. Massey with urgently needed care.

112. The information related to this incident, in accordance with DOCCS policy, was also shared directly with **DEFENDANT DEPUTY COMMISSIONER AND CHIEF MEDICAL OFFICER OF NYS DOCCS CARL KOENIGSMANN, MD,** who reviewed and signed the reports detailing Mr. Massey's symptoms, including loss of consciousness and severe illness in the context of reports evincing Mr. Massey's ongoing need for urgent medical care, but failed to ensure that Mr. Massey received medical care.

113. Defendants asserted, without evidence or witnesses, that Mr. Massey had overdosed on "wasp spray."

114. Still, despite the seriousness medical conditions and fatalities associated with this false and untested allegation, Defendants failed to procure care for Mr. Massey.

115. In fact, and consistent with Mr. Massey's continued insistence that he needed urgent medical attention for an ongoing serious health issue, Mr. Massey was suffering from the excruciating pain and near-total debilitation of untreated brain cancer and its unmanaged symptoms due to Defendant's conduct.

116. Rather than transporting Mr. Massey to a hospital or otherwise providing reasonable medical care, **DEFENDANT KINNEY** directed Mr. Massey's transfer back to Southport CF.

117.    Mr. Massey was cleared for such confinement by **DEFENDANTS KUBIK, KINNEY,** and **CAISLEY**, despite Mr. Massey's obvious physical distress and history of worsening symptoms.

118.    Upon his arrival to Southport CF on October 21, 2021, Mr. Massey appeared disoriented and was experiencing severe pain in his head and body.

119.    Nevertheless, on October 21, 2021, **DEFENDANT MICHAEL WARR (RN # 264)**, assessed Mr. Massey, who was in visible distress, and failed to provide necessary medical care.

120.    Instead, **DEFENDANT WARR** approved Mr. Massey for placement in solitary confinement and/or punitive segregation.

121.    This assessment was reviewed and approved by **DEFENDANTS FELKER AND WARDEN PICCOLO** despite Mr. Massey's obvious need for urgent medical care and despite the clear inconsistencies in the assessment given Mr. Massey's history as known to Defendants.

122.    Between October 21, 2021 and October 29, 2021, Mr. Massey remained at Southport CF in solitary confinement.

123.    **DEFENDANTS FELKER, WARR, PICCOLO,** and **KOENIGSMANN**, all of whom were individually aware of Mr. Massey's need for emergency medical care during this period of his confinement at Southport CF, refused to provide Mr. Massey with medical care.

124.    This denial persisted despite Mr. Massey's requests and despite Mr. Massey continually exhibiting the symptoms of severe and worsening illness during this period.

125.    Mr. Massey called his mother for the last time on October 25, 2021.

126.    On October 29, 2021, Mr. Massey was again discovered in his cell after experiencing a seizure in his cell while in solitary confinement for an unknown period of time.

127.    **DEFENDANT DOCCS MEMBER DOE # 2** failed to provide medical care to Mr. Massey and had failed to conduct required wellness checks for at least two (2) hours prior to discovering Mr. Massey on the floor of his cell.

128.    Mr. Massey had vomited and urinated on himself.

129.    The information related to this incident, in accordance with DOCCS policy, was once again shared directly with **DEFENDANT DEPUTY COMMISSIONER AND CHIEF MEDICAL OFFICER OF NYS DOCCS CARL KOENIGSMANN, MD,** who reviewed and signed the reports detailing Mr. Massey's symptoms, including loss of consciousness and severe illness in the context of reports evincing Mr. Massey's ongoing need for urgent medical care, but failed to ensure that Mr. Massey received medical care.

130.    At the time of his discovery by DOCCS staff on the floor of his cell, Mr. Massey was conscious and responsive, but was experiencing severe pain and difficulty moving.

131.    On October 29, 2021, Plaintiff Nora Massey arrived at Southport CF to visit her son, who had not been able to contact her for several days.

132.    Plaintiff Nora Massey was met in the arrival area by an unidentified member of Defendant's DOCCS, who falsely informed Ms. Massey that her son had overdosed on wasp spray and would not be permitted to see her.

133.    It was not until October 29, 2021, that Mr. Massey was transported finally transported to Arnot Ogden Medical Center ("AOMC") for care related to his progressing symptoms.

134.    Upon arrival at Arnot Ogden Medical Center, Mr. Massey was unable to speak and provide his own medical history.

135.    While Mr. Massey was unable to communicate, Defendants, believed to include

**DEFENDANT DOCCS MEMBER DOE # 2** and **DEFENDANT WARR**, falsely informed responding medical staff that Mr. Massey's condition was caused by Mr. Massey intentionally becoming intoxicated, further delaying and interfering with necessary medical care.

136.    On November 5, 2021, Mr. Massey was transported from Arnot Ogden to Westchester Medical Center to receive a higher level of emergency care.

137.    At this time, Mr. Massey was responsive upon arrival and continued to be aware of his condition and suffering.

138.    Mr. Massey's health continued to deteriorate.

139.    Due to Defendants' conduct, it was only on November 5, 2021, upon his arrival to Westchester Medical Center, that Mr. Massey was finally administered a brain scan that revealed lesions and a mass on his brain.

140.    Doctors ordered a biopsy to determine the nature of these obvious abnormalities.

141.    On or about November 18, 2021, the results of this biopsy revealed that Mr. Massey suffered from an aggressive and debilitating form of brain cancer.

142.    On December 16, 2021, Ms. Massey, as her son's medical representative, made the decision to discontinue lifesaving efforts for her son and allow him to enter palliative care.

143.    Mr. Massey was entirely unable to communicate at this time, although he continued to experience periods of consciousness.

144.    On December 17, 2021, Mr. Massey was transported to Montefiore Mount Vernon Medical Center, also in Westchester County, New York.

145.    On January 3, 2022, Mr. Massey died. He was 32 years old.

146.    Mr. Massey would have been eligible for parole in 2025.

147.    As a direct and proximate result of Defendant's deprivation of Mr. Massey

and Plaintiff's rights, Mr. Massey suffered the injuries and damages set forth above.

148.    Defendant caused and/or hastened Mr. Massey's death and forced him to endure extreme pre-death pain and suffering.

149.    Regardless of whether Mr. Massey was formally and specifically diagnosed with cancer at the time this conduct by Defendants occurred, his severe and rapidly worsening symptoms evinced clear, visible, and documented evidence of a serious medical need.

150.    Furthermore, even if Mr. Massey had, *arguendo*, inhaled wasp spray or any other illicit intoxicant as claimed in paperwork completed by Defendants, Defendants were aware that these acts also constituted life-threatening emergencies and a serious condition for which Mr. Massey should have received urgent medical care.

151.    Instead, Defendants used false and/or incomplete reports to justify punitive action and lack of medical care for Mr. Massey.

152.    Plaintiff Nora Massey, individually and as Estate Administrator for Decedent, Terrol Massey, individually, now bring the instant Complaint as a Survival Action before this Court.

## CLAIM FOR RELIEF

### Deliberate Indifference to Medical Care

***Against all Defendants Pursuant to <u>42 U.S.C. § 1983</u> and the Eighth Amendment to the United States Constitution***

153.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

154.    Defendants were obligated to provide Decedent, who was incarcerated in Defendant City's custody, with medical care and failed to do so.

155.    Decedent suffered from brain cancer, a serious medical condition that is commonly fatal and causes extreme pain and neurological symptoms as it progresses.

156.    For several months prior to his death, and as described above, Decedent reported and presented to Defendants exhibiting increasingly severe symptoms of a serious medical condition, including repeated incidents involving loss of consciousness and/or balance, debilitating migraine headaches, slurred speech, and reduced motor skills, which individually and cumulatively placed Defendants on notice that Decedent's condition was sufficiently serious to warrant urgent medical intervention.

157.    Defendants failed to provide urgent medical care prior to Decedent's death despite possessing the means, duty, and opportunity to do so, thus hastening and/or contributing to Decedent's death.

158.    These failures include, but are not limited to:

(a)    Defendants' failure to respond to Mr. Massey's requests for care;

(b)    Defendants' failure to provide Mr. Massey with reasonable medical care;

(c)    Defendants' delay in responding to Decedent's medical emergency;

(d)    Defendants' implementation of punitive measures including reduced access to medical care against Mr. Massey;

(e)    Defendants' failure to transport Decedent to a medical hospital within a reasonable period of time;

(f)    Defendant's decisions to implement punitive measures against Decedent for exhibiting the symptoms of his medical condition;

(g)    Defendants' failure to exempt Decedent from solitary confinement, including for the purpose of monitoring the progression and cause of these symptoms;

(h)    Defendants' failure to render aid; and

(i)    Defendants' failure to otherwise provide Decedent with medical care.

159.    These failures were unreasonable.

160.    An objectively reasonable person in Defendants' position would have known, or should have known, that Defendants' actions or omissions in failing to provide Decedent with medical care posed an excessive risk of harm.

161.    Decedent's medical condition significantly affected his daily activities and Defendants' deliberate indifference to his medical care caused Decedent severe, conscious pain and suffering prior to his death.

162.    Decedent's condition posed a risk of serious damage to Plaintiff's health, including risks to Decedent's life, physical, and/or mental soundness.

163.    Defendants' conduct rises to the level of deliberate indifference to Decedent's health.

164.    Defendants acted intentionally to impose these conditions or, in the alternative, recklessly failed to act with reasonable care to mitigate the risk that the condition posed to Decedent even though the Defendants knew, or should have known, that the conditions to which they subjected Decedent posed an excessive risk to Decedent's health or safety.

165.    As a result of Defendants' acts and omissions, Defendants wrongly caused Decedent conscious pain and suffering prior to his death and hastened and/or contributed to the loss of Decedent's life.

166.    Defendants' denial and/or delay of Mr. Massey's treatment permitted his serious medical condition to progress beyond any potential for lifesaving and/or life-extending treatment to be administered.

167.    Defendants forced Mr. Massey to live the last several months of his life in excruciating and unabated pain and caused Mr. Massey to die a lingering death in custody.

168.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, constituted callous indifference, and was otherwise of such a nature that punitive damages should be imposed against them.

## DAMAGES

169.    Plaintiff Nora Massey, individually and as Estate Administrator for Decedent, seeks all damages to which Plaintiff and/or Decedent are entitled, including, *inter alia*, punitive damages, actual damages, and damages for Decedent's pre-death conscious pain and suffering.

170.    The full extent of the damages in this matter are not yet known.

**I.**    ***Conscious Pain and Suffering and All Damages to Which Decedent, by his Estate, is Entitled Pursuant to Survival Claims Under 42 U.S.C. § 1983***

171.    The survival claims to which Decedent Terrol Massey, by his Estate, is entitled are sustained through and proximately caused by Defendants' conduct, including, *inter alia*, the recklessness and/or deliberate indifference of the Defendants named herein, and by the causes of action enumerated herein.

172.    The conduct of Defendants described herein caused Decedent Terrol Massey to experience intense conscious, pre-death pain and suffering of which he was fully aware.

173.    Defendants' conduct caused Mr. Massey to suffer severe conscious pain and suffering, including: migraines, seizures, pain and bruising to his face, head, and body sustained during falls caused by his condition, loss of mobility, nausea, vomiting, vision loss, hearing loss,

numbness, inability to eat, inability to sleep, inability to communicate, and additional severe conscious pain and suffering caused by untreated brain cancer progressing over the course of approximately six (6) months and persisting until the time of his death on January 3, 2022.

174.    Defendants further caused Decedent severe emotional pain and suffering, including severe emotional anguish, fear of death, disorientation, hallucinations, knowledge of impending death, anxiety, distress, loss of enjoyment of life, and additional injuries.

175.    This pain and suffering endured by Decedent Terrol Massey prior to his death was caused and exacerbated by Defendants' conduct, and they are liable to Decedent's Estate, by Plaintiff Nora Massey, for Decedent's conscious pain, suffering, and related damages under the instant survival action.

## II.    *Loss-of-Life Damages Pursuant to 42 U.S.C. § 1983*

176.    Plaintiff Nora Massey, as the Administrator of Decedent's Estate, and as Decedent's mother and next of kin, further seeks damages stemming from Decedent's and loss of enjoyment of life and/or loss of life and/or loss of society as permitted by 42 U.S.C. § 1983.

## III.    *Pecuniary and Actual Damages*

177.    Plaintiff Nora Massey, as the Administrator of Decedent's Estate, further seeks actual and pecuniary damages including, but not limited to, loss of Decedent's services, loss of society, medical costs, and funeral expenses.

## IV.    *Punitive Damages Pursuant to 42 U.S.C. § 1983*

178.    Plaintiff will further seek punitive damages against all non-City Defendants pursuant to 42 U.S.C. § 1983.

179.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, constituted callous indifference, and was otherwise of such a nature that punitive damages should be imposed against them.

### DEMAND FOR A JURY TRIAL

180.    Plaintiff demands a jury trial of all issues capable of being determined by a jury.

### CONCLUSION AND DEMAND FOR JUDGMENT

**WHEREFORE,** Plaintiff demands judgment against the individual Defendants for:

i.    Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

ii.    Damages for Decedent's conscious pre-death pain and suffering;

iii.    Damages for Decedent's loss of life;

iv.    All damages to which Plaintiff, Nora Massey, and/or Decedent, Terrol Massey, are or would have been entitled to pursuant to 42 U.S.C. § 1983;

v.    Punitive and actual damages, fees, and costs pursuant to 42 U.S.C. §§ 1983 and 1988; and

vi.    Such other relief as the Court deems just and proper.

**Dated:** Brooklyn, New York
        January 3, 2025

                                    KAISHIAN & MORTAZAVI LLC
                                    Attorneys for Plaintiffs

                                    By _____
                                    **Maryanne K. Kaishian, Esq.**
                                    55 Washington Street, Ste. 508
                                    Brooklyn, New York 11201
                                    T: (347) 662-2421
                                    E: mk@kaishianlaw.com

### ATTORNEY VERIFICATION

I, **MARYANNE K. KAISHIAN**, Partner with **KAISHIAN & MORTAZAVI LLC** and an attorney duly admitted to practice before the Courts of the State of New York, affirm the following to be true under the penalties of perjury:

1.      I am the attorney of record for the Plaintiff, Nora Massey, individually and as Estate Administrator for Decedent Terrol Massey, in the above matter.

2.      I have read the annexed Complaint, dated January 3, 2025, and I know and am familiar with the contents thereof.

3.      The information contained in this Verified Amended Complaint are true to my knowledge, except those matters therein which are alleged upon information and belief, and as to those matters, I believe them to be true.  My beliefs, as to those matters therein not stated upon knowledge, are based upon facts, records, and other pertinent information contained in my files.

4.      I make this verification because Plaintiffs do not reside in the County (Kings) where I maintain my office.

**Dated:**  Brooklyn, New York
            January 3, 2025

                                        KAISHIAN & MORTAZAVI LLC
                                        Attorneys for Plaintiff/Decedent

                                        By: _____
                                        **Maryanne K. Kaishian, Esq.**
                                        55 Washington Street, Ste. 508
                                        Brooklyn, New York 11201
                                        T: (347) 662-2421
                                        E: mk@kaishianlaw.com

EXHIBIT 2

**28 U.S.C. § 1446(a), List of Process, Pleadings and Orders filed in State Court Action**

(Doc. 1) Summons and Complaint